[959 NE2d 498, 935 NYS2d 561]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v MAKEDA DAVIS, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v FAYOLA MCINTOSH, Respondent.

Argued September 6, 2011; decided October 25, 2011

634

## POINTS OF COUNSEL

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Susan Gliner* and *Alan Gadlin* of counsel), for appellant in the first and second above-entitled actions. As the trial court found, judicial authorization was not required before submitting the case to a second grand jury when the People presented the case to a first grand jury, announced that the case would be presented on more than one day, but were able to present only one witness during that session, and then had to withdraw the case due to witness unavailability. The Appellate Division erred when it found otherwise only because a legally sufficient case had been presented to the first grand jury. (*People v Wilkins*, 68 NY2d 269; *People v Montanez*, 90 NY2d 690; *People v Cade*, 74 NY2d 410; *People v Gelman*, 93 NY2d 314; *People v Aarons*, 2 NY3d 547; *People v Santmyer*, 255 AD2d 871.)

*The Freyberg Law Group*, New York City (*Mark L. Freyberg* and *Joel G. Kosman* of counsel), for respondent in the first above-entitled action. The District Attorney violated CPL 190.75 by withdrawing an essentially completed case from the first grand jury and then resubmitting it, without leave of the court, to a second grand jury. (*People v Huston*, 88 NY2d 400; *People v Wilkins*, 68 NY2d 269; *People ex rel. Flinn v Barr*, 259 NY 104; *People v Gelman*, 93 NY2d 314; *People v Bello*, 92 NY2d 523; *People v Deegan*, 69 NY2d 976; *People v Jennings*, 69 NY2d 103; *People v Schulz*, 4 NY3d 521; *People v McKinnon*, 15 NY3d 311; *Matter of Blancero v Brown*, 216 AD2d 384, 86 NY2d 705.)

*Office of the Appellate Defender*, New York City (*Lily Goetz, Richard M. Greenberg* and *Joseph M. Nursey* of counsel), for respondent in the second above-entitled action. The prosecution abused the grand jury process by re-presenting the case against Fayola McIntosh to a second grand jury panel, without judicial authorization, after unilaterally withdrawing the essentially completed case from another grand jury panel four months earlier. (*People v Wilkins*, 68 NY2d 269; *People v Franco*, 86 NY2d 493; *People v Jones*, 206 AD2d 82; *People v Hemstreet*, 234 AD2d 609; *People v Dykes*, 86 AD2d 191; *People v Aarons*, 2 NY3d 547; *People v Gelman*, 93 NY2d 314; *People v Arroyo*, 54 NY2d 567; *People v Beckwith*, 289 AD2d 956.)

PIGOTT, J.

The primary issue on these appeals is whether the People's withdrawal of their case from the first grand jury presentation due to witness unavailability constituted the functional equivalent of a dismissal pursuant to CPL 190.75 and our holding in *People v Wilkins* (68 NY2d 269 [1986]). We conclude that under the circumstances of each case it did not.

## I.

The assault charges lodged against defendants Makeda Davis and Fayola McIntosh stem from a June 11, 2006 altercation at a nightclub allegedly instigated by Davis and joined in by McIntosh resulting in Lynn Walker sustaining severe injuries. McIntosh was arrested shortly after the incident; Davis was not apprehended until some time later.

On June 20, 2006, before police located and arrested Davis, the People began presenting evidence to a grand jury. Before calling the complainant, the People advised the jury that they were presenting evidence against McIntosh only and that "[t]his will be a continued case," meaning that not all evidence would be submitted in one session.

Walker then testified that Davis, an acquaintance of hers, assaulted her. She further testified that McIntosh, also an acquaintance, joined in the assault. Ten days later, on June 30, 2006, the People advised the grand jury that they were withdrawing the case due to witness unavailability and the fact that it was this grand jury's last day.

Four months later, the People presented evidence to another grand jury, this time naming both Davis and McIntosh as targets, and asking it to consider the same charges against both defendants. The People called three witnesses: Walker, the attending physician who treated Walker the night of the incident, and an eyewitness. The grand jury indicted both defendants on two counts of assault in the first degree and one count of assault in the second degree.

Supreme Court denied defendants' motions to dismiss the indictment on the ground that the People should have obtained court authorization pursuant to CPL 190.75 (3) before re-presenting the case to a second grand jury. Following trial, Davis was convicted of all three assault counts. McIntosh was acquitted of the first-degree assault counts, but convicted of assault in

the second degree. Davis and McIntosh brought separate appeals, claiming that the People should have obtained court authorization pursuant to CPL 190.75 (3) before re-presenting their cases to a second grand jury.

In *People v Davis*, the Appellate Division, with two Justices dissenting, reversed the judgment of conviction and dismissed the indictment, but granted the People leave to apply for an order of Supreme Court permitting them to resubmit the charges to another grand jury, holding that the People's prevote withdrawal of the case from the first grand jury constituted "the functional equivalent of a dismissal" under this Court's holding in *People v Wilkins*, requiring the People to obtain court permission before re-presentment (72 AD3d 53, 65 [1st Dept 2010]).

In *People v McIntosh*, the Appellate Division unanimously reversed, relying on its rationale in *Davis*, and dismissed the indictment, once again with leave for the People to seek leave to resubmit the charges to another grand jury (73 AD3d 653 [2010]). A Justice of the Appellate Division granted the People leave to appeal in *Davis* (2010 NY Slip Op 71696[U] [2010]), and a Judge of this Court granted the People leave to appeal in *McIntosh* (15 NY3d 807 [2010]), and we now reverse in both.

## II.

As relevant to these cases, CPL 190.60 (4) provides that once a grand jury hears and examines the evidence, it may among other options, dismiss the charge before it, as provided in section 190.75. A grand jury *must* dismiss a charge lodged against a designated person where the evidence before it is legally insufficient to demonstrate that such person committed the crime charged or any other offense, or where it is not satisfied that there is reasonable cause to believe such person committed such crime or any other offense (*see* CPL 190.75 [1] [a], [b]). In such a case, the dismissed charges may be re-presented to another grand jury but only after the People obtain court authorization (*see* CPL 190.75 [3]). This rule was enacted to "curb abuses that resulted from the common-law rule that allowed prosecutors to resubmit charges to successive Grand Juries *ad infinitum* until one voted an indictment" (*People v Montanez*, 90 NY2d 690, 693 [1997] [emphasis added], citing *Wilkins*, 68 NY2d 269, 273 [1986], *supra*).

Not every dismissal is the result of a grand jury's explicit action pursuant to CPL 190.60 and 190.75, however. In *Wilkins*, we held that the People's prevote withdrawal of charges from

the grand jury, after the presentation was complete but before the grand jury was charged on the law, was the functional equivalent of a dismissal for purposes of CPL 190.75 (3), requiring the People to obtain court authorization before resubmission. There we held that the essential issue in deciding whether the People's withdrawal from the grand jury should be treated as a de facto dismissal was "the extent to which the Grand Jury considered the evidence and the charge" (68 NY2d at 274). The People's first presentation in *Wilkins* "was, as far as the prosecution was concerned, complete," and we concluded that because all of the witnesses had testified and the only thing left for the People to do was charge the jury on the law, the People's "unilateral withdrawal so late in the game must be deemed a dismissal, regardless of the good faith of the withdrawal" (*id.* at 274, 275).

We have made clear that *Wilkins* applies in only "limited circumstances" where the People's withdrawal of a case from the grand jury "is fundamentally inconsistent with the objectives underlying CPL 190.75" (*People v Gelman*, 93 NY2d 314, 319 [1999]). Such objectives include curtailing prosecutorial excess in resubmitting charges repeatedly until a grand jury votes an indictment (*see Wilkins*, 68 NY2d at 275), and maintaining the independence of the grand jury (*see Montanez*, 90 NY2d at 694).

### III.

In *Davis*, the order of the Appellate Division should be reversed, because the People had instructed the first grand jury that only McIntosh was the target of the proceedings. Although Walker testified before the first grand jury that Davis also participated in the attack, the introduction of such testimony was unavoidable given the fact that this was a joint attack. At that point, Davis had not been arrested. Moreover, the People advised the grand jury that it was to consider the evidence only against McIntosh. Since the People never sought an indictment from the first grand jury against Davis, *Wilkins* is irrelevant since there were no charges against Davis to be withdrawn (*see People v Santmyer*, 255 AD2d 871, 871 [4th Dept 1998]).

### IV.

With respect to McIntosh, it is undisputed that she was a target of both grand jury presentations. In this case, however, the Appellate Division erred in focusing on the legal sufficiency of the People's case against McIntosh at the time they withdrew

it rather than on "the extent to which the Grand Jury considered the evidence and the charge" (*Wilkins*, 68 NY2d at 274). Here, it cannot be said that the proceedings before the first grand jury had progressed to the point where it had fully considered the evidence and the charges against McIntosh. It is clear from the record that the People intended to present additional witnesses, stating before presenting any evidence that it would be a continuing case. Moreover, 10 days later, at the end of the grand jury's term, there was at least one witness the People intended to present who was unavailable to testify. There is no evidence in this record that would raise the primary concern of this Court's holding in *Wilkins*, namely that the People withdrew their case in order to present it to a more compliant grand jury. The People's withdrawal of the charges under these circumstances does not constitute a dismissal under *Wilkins*, and the People were not therefore required to obtain court authorization before re-presenting the case to another grand jury.

Accordingly, the orders of the Appellate Division in both *Davis* and *McIntosh* should be reversed, and the cases remitted to the Appellate Division for consideration of the facts and issues raised but not determined on the appeals to that court.

Chief Judge LIPPMAN (concurring in *Davis* and dissenting in *McIntosh*). Although I join in the majority's decision to reverse in *Davis* upon the very narrow ground that Davis was expressly not a target of the first presentation, I part company with the majority as to its disposition in *McIntosh*, which I believe rests upon a misreading of *People v Wilkins* (68 NY2d 269 [1986]).

It is not debatable that under *Wilkins* the crucial consideration in determining whether judicial permission for re-presentation is required pursuant to CPL 190.75 (3) is "the extent to which the Grand Jury considered the evidence and the charge" (68 NY2d at 274). The majority, after duly quoting this formulation, directly concludes that permission for re-presentation was not required with respect to the charges against *McIntosh* because "it cannot be said that the proceedings before the first grand jury had progressed to the point where it had *fully* considered the evidence and charges against [her]" (majority op at 639 [emphasis added]). Although it is clear that when there is full consideration of the charges, a prosecutor's withdrawal of a matter will be deemed a dismissal triggering the application of CPL 190.75 (3) (*see People v Credle*, 17 NY3d 556

[2011] [decided herewith]), nowhere in *Wilkins* is *full* consideration of the evidence and charge made a necessary condition of judicial supervision of a prosecutor's decision to resubmit charges to a second grand jury. To the contrary, the *Wilkins* Court observed that "the presentation need not be complete for consideration equivalent to a dismissal to occur" (68 NY2d at 274) and specifically noted that it had been "clearly held" in *Matter of McGinley v Hynes* (75 AD2d 897 [2d Dept 1980], *revd on other grounds* 51 NY2d 116 [1980], *cert denied* 450 US 918 [1981]) that "the Grand Jury had heard and considered enough to render the withdrawal of the case equivalent to a dismissal, *even though the prosecutor conceded that he had not finished presenting his case and certainly could not at that point have formally instructed the Grand Jury on the law*" (*Wilkins*, 68 NY2d at 274-275 [emphasis added]). While we did observe in *Wilkins* that the presentation there at issue had progressed further than had the presentation in *McGinley*, and that it was, in contrast to the presentation in *McGinley*, complete "as far as the prosecution was concerned" (*id.* at 274), we did not thereby hold that the effect of a withdrawal should turn upon whether the presenting prosecutor was of the view that he or she had completed presenting a matter. Our observation merely served to show that the presentation in *Wilkins* had exceeded by far the benchmark established by *McGinley*, where the prosecutor "concededly" had not finished his presentation.

There is no question that where a grand jury has not considered the evidence and charge against a particular target at all, the matter's withdrawal may not be deemed a dismissal as against that individual (*People v Gelman*, 93 NY2d 314, 319 [1999]). What is less clear, and what neither *Wilkins*, at one end of the spectrum, nor *Gelman* at the opposite extreme are particularly helpful in ascertaining, is precisely when the prosecutor has crossed the rubicon—the point at which the prosecutor has placed before a grand jury sufficient evidence of a targeted individual's commission of a crime that the prosecutor's act of wresting the matter back from the grand jury should be considered a dismissal within the meaning of CPL 190.75 (3). The Appellate Division in *Davis* (*see* 72 AD3d 53, 60 [2010]) and at least one commentator (*see* Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 190.75, at 141), have understood the decisive inquiry to be whether there was at the time of the withdrawal sufficient evidence of the submitted offenses before the grand jury to support an indictment against a particular target. While that test is imperfect for denying the

inference in situations where it might well be warranted—since the withdrawal of a count that would likely have been dismissed had it been voted would seem a natural candidate for a *Wilkins* dismissal—the sufficiency test has the virtue of clarity and would avoid the prospect of dismissal in situations where the prosecutor simply had not been able to present a prima facie case before the first grand jury. Certainly it is a test preferable to one in which the prosecutor's subjective satisfaction with the fullness of his or her presentation is the measure. In any case, once a prosecutor has presented to a particular grand jury evidence sufficient to justify the indictment of a particular individual for a specified offense, it would seem entirely fair and consistent with the governing statutory design that there should arise a presumption that the matter will be disposed of by action of that first grand jury, which is to say that the matter will be concluded by that grand jury in one of the five ways authorized by CPL 190.60. In those hypothetically rare situations in which this does not occur and the first grand jury's consideration of a matter is terminated not by its own statutorily authorized action but by the unilateral action of the prosecutor, the concerns underlying CPL 190.75 (3) are fully implicated and court supervision is necessary to assure that the action of the prosecutor has not impermissibly stripped the grand jury of its independent prerogative to judge whether a matter should be the subject of an indictment.

At the time of the withdrawal of the McIntosh matter, the prosecutor had presented considerable evidence implicating McIntosh in the charged offenses. While the presentation may not have been complete from the prosecutor's perspective, that, as noted, cannot under *Wilkins* be dispositive of whether the matter's withdrawal should be viewed as a dismissal triggering the applicability of CPL 190.75 (3). There is no question that the prosecutor had elected to commit the matter to the grand jury and that in pursuance of that election substantial evidence of McIntosh's participation in the alleged wrongdoing was presented to and considered by the grand jury. Indeed, the Appellate Division found that the People had made "a full presentation of a legally sufficient case" against their named target (72 AD3d at 63). Having progressed so far, the prosecutor was not, under *Wilkins*, free to withdraw the case and re-present it to a second panel without leave of the court. It may be that the withdrawal was prompted only by the circumstance that the grand jury's term was drawing to a close and there was still

evidence that the prosecutor wished to present. The prosecutor, however, did not ask the grand jury to extend its term, as she could have (see CPL 190.15 [1]) and, in any event, the issue in judging whether a dismissal should be inferred is not the prosecutor's good faith or lack of it—an issue that might be highly pertinent to a subsequent decision as to whether re-presentment should be allowed—but rather whether the presentation had progressed to the point that the grand jury should in the ordinary discharge of its responsibilities and function have disposed of the charges proposed as to the target in one of the statutorily authorized ways. Manifestly, that point had been reached and, that being the case, a judge, and not the prosecutor, should have decided in the first instance whether the circumstances of the withdrawal justified an exception to the policy against serial submissions of the same counts that CPL 190.75 (3) exists to enforce.

If an inference of dismissal under *Wilkins* could be avoided simply by a prosecutorial assertion of dissatisfaction with the fullness of the first presentation—an assertion undoubtedly easily made in very many cases given the fairly undemanding standard of evidentiary sufficiency applicable where indictments are concerned and the consequently tactically thin grand jury presentations often made—*Wilkins* would be effectively undone. Consistent with its limiting purpose (see *People v Credle, supra*), all that *Wilkins* purports to require as a condition of a "dismissal" within the meaning of CPL 190.75 (3) is that the grand jury " 'knew about and considered the charge' " (68 NY2d at 274, quoting *People v Nelson*, 298 NY 272, 276 [1948]). Plainly, those threshold criteria were met during the initial presentation against defendant McIntosh.

Judges CIPARICK, GRAFFEO, READ, SMITH and JONES concur with Judge PIGOTT; Chief Judge LIPPMAN in a separate concurring opinion in which Judges CIPARICK and JONES concur.

In *People v Davis*: Order reversed, etc.

Judges GRAFFEO, READ and SMITH concur with Judge PIGOTT; Chief Judge LIPPMAN dissents in a separate opinion in which Judges CIPARICK and JONES concur.

In *People v McIntosh*: Order reversed, etc.